In re **MICRO BROKERS, INC.,** Debtor.

No. 885–51376–20.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Dec. 18, 1985.

Howard Arber, West Hempstead, N.Y., for movant.

Schwartz, Sachs & Kamhi, Carle Place, N.Y. by Jeffrey Morgenstern, of counsel, for debtor.

Marilyn Frier, Woodmere, N.Y., trustee.

## DECISION

ROBERT JOHN HALL, Bankruptcy Judge.

This matter came to be heard by order to show cause submitted by Alan Behar and

Sheldon Ostrov. Behar and Ostrov are two of the principals of the debtor, and they contend that the petition for bankruptcy filed on behalf of the debtor corporation should be dismissed because the corporate rules for approval of a bankruptcy filing were broken. The court finds that since evidence was adduced at the hearing of this case pertaining to tax fraud, embezzlement, and corporate misconduct, notice of this matter should have been given to all creditors. Because notice was given to the trustee and corporate participants only, the motion is denied.

FACTS

1. Micro Brokers Inc., was organized formally by a statement of incorporators dated July 11, 1984. The five incorporators are listed as: Alan Behar, Sheldon Ostrov, Robert Gassick, Martin Mischner, and Michael Thuroff.

The minutes of the first meeting of the Board of Directors are also dated July 11, 1984. The incorporators were all named directors, and officers as follows: Sheldon Ostrov, president; Michael Thuroff, vice president; Martin Mischner, vice president; Robert Gassick, secretary; and Alan Behar, Treasurer. The same gentlemen were named as shareholders as follows: Robert Gassick and Martin Mischner each paid one dollar for twenty-five shares each; Sheldon Ostrov and Alan Behar each paid ninety-six cents for twenty-four shares each; and, Alan Thuroff paid eight cents for two shares. At the first meeting of shareholders, also dated July 11, 1984, the 'shareholders' ratified all acts and business conducted by the 'incorporators' and 'directors'; and then the 'shareholders' elected themselves as directors.

2. Shortly after the corporation was organized, Martin Mischner and Robert Gassick started to draw checks of six-hundred dollars per week to work as salesmen for Micro Brokers, Inc.

3. In September of 1984, Mr. Mischner and Mr. Gassick commenced drawing reduced checks of only $448.00 per week.

Behar and Ostrov assert that the reduction from $600.00 to $448.00 was made because Mischner and Gassick were taken off salary. Instead, the corporation was to loan Gassick and Mischner $448.00 each per week as a draw against commissions earned, and Gassick & Mischner were liable to repay any shortfall.

In contradiction, Gassick and Mischner contend that the reduction was made to help Micro Brokers' cash flow. Gassick and Mischner assert that $448.00 represents the net pay they were receiving when drawing salaries of $600.00 per week. Gassick and Mischner contend that they agreed to take $448.00 per week, and that Micro Brokers would pay all taxes at some unspecified time in the future.

Gassick's and Mischner's W-2 statements indicate that they each received $5,400 in salary in 1984, which computes to nine weeks of salary at $600 per week, (July—August) Gassick and Mischner both admitted that they reported to the Internal Revenue Service no income relating to the $448.00 payments from Micro Brokers in 1984. Micro Brokers, Inc. filed a corporate tax return in 1984 showing "loans to shareholders" totalling $11,648.00. No written agreement or corporate documents were alleged to memorialize the existence of any employment or debtor-creditor relationship among Gassick/Mischner, Behar/Ostrov, and Micro Brokers, Inc.

4. Micro Brokers, Inc. ceased operation in May, 1985.

5. On Friday, May 3, 1985, telegrams were sent to Behar and Ostrov informing them that a special meeting of directors and shareholders would be held on Monday, May 6, 1985 for: the selection of directors and officers to replace Behar and Ostrov; new bank resolutions for the deposit of corporate funds; fixing corporate salaries; and other business.

6. On May 6, 1985 a meeting was held attended by Gassick, Mischner, and Thuroff. The following action was taken: Ostrov and Behar were removed as officers and directors; Gassick, Mischner, and Thuroff were named as signatories for the corporate bank account; Gassick and Mischner were given "bonuses" amounting to

the amount of "loans to directors" carried on the corporate books; and, the corporation was authorized to file for bankruptcy. Gassick, Mischner and Thuroff signed a waiver of notice.

7. Also on May 6, 1985 notice was sent to Behar and Ostrov that a meeting would be held on May 18, 1985. At the May 18 meeting, attended by Gassick, Mischner, and Thuroff, the actions taken at the meeting on May 6, 1985 were ratified.

8. On May 22, 1985, Gassick, Mischner, and Thuroff by preliminary injunction in state court froze Micro Brokers' corporate bank account in First National Bank of Long Island containing $21,000.00.

9. Behar and Ostrov asked Mischner, Thuroff and Gassick to voluntarily release Micro Brokers' funds, and the request was denied.

10. On May 29, 1985, Behar and Ostrov filed an order to show cause in the Supreme Court of New York, County of Nassau, to compel the bank to release the funds; and to restrain Gassick, Mischner, and Thuroff from taking other action to prevent release of the money.

11. On August 23, 1985, Judge Molloy granted Behar and Ostrov a preliminary injunction releasing the bank accounts.

12. On August 27, 1985 a voluntary petition for bankruptcy was filed by Micro Brokers, Inc. signed by Robert Gassick as President.

13. On September 3, 1985, the court granted Behar and Ostrov an order to show cause to be heard on September 19, 1985, to determine whether the corporation was authorized to file for bankruptcy, and consequently, whether the petition should be dismissed. The court ordered, upon movant's application, that notice to Gassick, Mischner, Thuroff and the trustee of the corporation chapter 7 estate be deemed sufficient.

## DISCUSSION

The threshold issue in this matter is whether the notice given of this order to show cause is fair to all parties in interest according to the rules set forth for due process contained in the United States Bankruptcy Code and Rules.

11 U.S.C. § 707(a) provides that: "The Court may dismiss a case under this chapter only after notice and a hearing and only for cause...." Thus, section 707(a) makes notice a mandatory condition for dismissal. 11 U.S.C. § 102(1) sets forth as a rule of construction, that the notice which must be provided is that which is appropriate under the circumstances.[1] Nonetheless, the use of the word "only" in section 707(a) may indicate that a narrow interpretation of notice is required. Bankruptcy Rule 1017 provides as notice for motions to dismiss that:

... a petition shall not be dismissed on motion of the petitioner or for want of prosecution *or other cause* or by consent of the parties prior to a hearing on notice to all creditors as provided in Rule 2002(9).[2] [Emphasis added].

When presented with Behar's and Ostrov's order to show cause, the cause for dismissal appeared to be the bankruptcy petitioners' (Gassick, Mischner, and Thuroff) failure to comply with formalities in giving notice of Micro Brokers' special meeting of the Board of Directors on May 6, 1985. Accordingly, the court followed the suggestion of Behar and Ostrov that notice be given only to the trustee, Gassick, Mischner, and Thuroff. The court decided that in these circumstances, the interests of judicial economy would make such a liberal interpretation of "notice" appropriate, under 11 U.S.C. § 102(1).

During the hearing of this order to show cause, serious allegations concerning tax fraud, embezzlement, and corporate mis-

**1.** *Collier on Bankruptcy* ¶ 707.01 (15th ed. 1984); *see also,* 11 U.S.C. § 305 for parallel language governing dismissal based on abstention.

**2.** *See* "Advisory Committee Note" appended to Rule 1017 for the proposition that B.R. 1017 applies to 11 U.S.C. § 707: "This subdivision implements §§ 303(i), 707, 1112 and 1307 of the Code by specifying the manner of and persons to whom notice shall be given and requiring the court to hold a hearing on the issue of dismissal."

conduct were made, and the court now finds that it would be unfair to the creditors of this bankruptcy estate to dismiss the case without giving the creditors a chance to examine the witnesses and an opportunity to be heard. For example, Gassick and Mischner both testified under oath that they purposely did not report thousands of dollars of income in 1984, and that they caused Micro Brokers to withold taxes due. Certainly the U.S. Internal Revenue Service and the New York State Department of Taxation (named creditors), should have had notice of this motion as they have an interest in such matters. Thus, the court hereby denies the relief sought, because granting dismissal of the bankruptcy would violate the creditors' right to be heard under Bankruptcy Rules 1017 and 2002(a).[3]

SO ORDERED.

---

3. Based on the evidence heard, the court suggests to the trustee that several areas of inquiry may prove profitable to the bankruptcy estate.

For example, the employment of 'directors' Gassick and Mischner for salaries may have violated New York State Corporation law and the total sums paid as salaries might be charged against each director personally. N.Y.B.C.L. § 713 provides that a corporation is not barred from doing business with its directors provided certain formalities are complied with. In this case, the directors apparently did not even hold a meeting to discuss employment of directors. Since Behar and Ostrov testified that neither Gassick nor Mischner were making sales, the trustee might investigate the possibilities of fraud or embezzlement stemming from unauthorized draws of salary from the corporate account, and thus, consequential damages against the directors as "waste". 15 N.Y.Jur.2d § 1043.

If Behar and Ostrov's statements are true, and the $448.00 payments were actually loans (not salary), the estate's rights under N.Y.B.C.L. § 719 might be investigated. Any loan to a director must be approved by directors, and shareholders. N.Y.B.C.L. § 714. In this case, the directors did not even meet, so personal liability might arise under New York law, and as fraudulent conveyances or preferences under bankruptcy law.