212 B.R. 437 (1997)
In re Francis J. DINOVA, Debtor.
Francis J. DINOVA, Plaintiff-Appellant,
v.
Gregory G. HARRIS, Ch. 7 Trustee, and Mary Elizabeth Tom, Acting United States Trustee, Defendant-Appellees.
Bankruptcy No. 96 B 16755, BAP No. 97-50015.
United States Bankruptcy Appellate Panel of the Second Circuit.
Argued June 13, 1997.
Decided September 19, 1997.
*438 *439 Richard Croak & Associates, P.C. by Richard Croak, Albany, NY, for Debtor.
Harris & Bixby by Karen B. Simons, Albany, NY, for Chapter 7 Trustee Gregory G. Harris.
Mary Elizabeth Tom, Acting United States Trustee by Kim F. LeFebvre, Albany, NY.
Before: NINFO, GALLET, and HARDIN, Bankruptcy Judges.

DECISION
ADALAI S. HARDIN, Jr., Bankruptcy Judge.
Francis J. DiNova (the "Debtor") appeals the dismissal of his Chapter 7 case on the ex parte application of Gregory G. Harris, the Chapter 7 Trustee (the "Trustee").[1] We *440 have jurisdiction of this appeal pursuant to 28 U.S.C. § 158(b) and (c). Because the Trustee's ex parte motion violated 11 U.S.C. § 707(a) and failed to disclose material facts showing lack of cause for dismissal, the order of dismissal is VACATED and the case is REMANDED to the Bankruptcy Court.

Background
On December 13, 1996, the Debtor, by his attorney, Richard Croak, Esq. ("Croak"), filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On December 17, 1996, the United States Trustee ("UST") appointed the Trustee, an attorney, as the Chapter 7 Trustee. Pursuant to 11 U.S.C. § 341, the first meeting of creditors was scheduled for January 21, 1997 ("341 Meeting").
On December 19, 1996, the Bankruptcy Court Clerk's Office mailed a "Notice of Commencement of Case Under Chapter 7 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates" ("Notice of Commencement of Case") in the standard form used in the Northern District of New York to the Debtor, his creditors and parties in interest. The Notice of Commencement of Case contained a warning legend ("warning legend") in bold, capital letters stating "FAILURE BY THE DEBTOR(S) TO APPEAR [at the meeting of creditors] SHALL RESULT IN THE DISMISSAL OF THE CASE UPON EX PARTE ORDER." There is no dispute that the Debtor received the Notice of Commencement of Case.
Although the Debtor did not appear at the 341 Meeting, Croak did. The Trustee adjourned the 341 Meeting to February 10, 1997.[2] The extraordinarily sparse hearing record does not reflect why the Trustee adjourned that initial meeting or if Croak offered a reason for his client's absence.[3]
On February 10, 1997, the Debtor did not appear at the adjourned 341 Meeting. Croak again appeared, however, and the Trustee again adjourned the 341 Meeting, to March 18, 1997. The record does not show why the Trustee granted the Debtor a further adjournment or whether Croak offered an explanation of the Debtor's absence.[4]
On February 25, 1997, before the second adjourned 341 Meeting, the Trustee, relying on 11 U.S.C. § 707(a)(1), moved, ex parte, to dismiss the case for the Debtor's failure to appear at a 341 meeting. In his moving papers, the Trustee failed to reveal (i) that he had adjourned the 341 Meeting a second time to March 18, (ii) why he had twice adjourned the 341 Meeting or (iii) that the Debtor's attorney had appeared at both the initial and adjourned 341 Meetings. That same day, the Bankruptcy Court granted his application and signed the order from which the Debtor appeals.
This appeal raises questions as to whether the warning legend contained in the Notice of Commencement of Case satisfied the requirements of 11 U.S.C. § 707(a) and whether the Chapter 7
Trustee's conduct in connection with the ex parte motion to dismiss warrants remand to the Bankruptcy Court.
I. The requirements of section 707(a)
The Debtor seeks reversal on the sole ground that the warning legend imprinted on the Notice of Commencement of Case does not comply with the notice, hearing and cause requirements of 11 U.S.C. § 707(a). We agree.
*441 Section 707(a) states that the bankruptcy court "may dismiss a case under this chapter only after notice and a hearing and only for cause. . . . ." Section 102, entitled "Rules of construction," provides:
(1) "after notice and a hearing", or a similar phrase-
(a) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
(B) authorizes an act without an actual hearing if such notice is given properly and if 
(i) such a hearing is not requested timely by a party in interest; or
(ii) there is insufficient time for a hearing to be commenced before such an act must be done, and the court authorizes such act;
Dismissal of a Chapter 7 case, whether voluntarily or involuntarily as to the debtor, implicates all those considerations affecting both the debtor and creditors which are at the heart of the Bankruptcy Code, such as the debtor's rights to the benefit of the automatic stay and to the discharge in bankruptcy and the creditors' rights to the benefit of the stay, to subject the debtor's property to the supervision of the Court and the control of a Chapter 7 trustee and to the fair and orderly administration of the debtor's estate. Because of the critical importance of the determination whether a case should be dismissed, section 707(a) states unequivocally that the court may dismiss "only" after notice and a hearing and then "only" for cause.
Turning first to the latter requirement of section 707(a), in determining the existence of "cause" the court must consider the interests of both the debtor and creditors. The point was well-articulated in In re Schwartz, 58 B.R. 923 (Bankr.S.D.N.Y.1986):
In determining whether cause exists, the test is whether dismissal is in the best interest of the debtor and his creditors. As to a debtor, best interest lies generally in securing an effective fresh start upon discharge and in the reduction of administrative expenses leaving him with resources to work out his debts. As to creditors, the issue is one of prejudice, and if delay is said to have prejudiced them, whether, as § 707(a) provides, the delay has been unreasonable. They are generally not prejudiced by dismissal since they will no longer be stayed from resorting to the state courts to enforce and realize upon their claims. But creditors can be prejudiced if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting the amounts owed to them. A prejudicial delay also creates the appearance that such an abusive practice is implicitly condoned by the Code. In re Klein, 39 B.R. [530 (Bankr.E.D.N.Y. 1984)] at 533.
Other forms of potential abuse must be guarded against. Dismissal of a bankruptcy petition that was filed principally to forestall creditors should not be permitted after the delay sought has been achieved. Nor should dismissal be ordered where it is contemplated that the case might be refiled in another forum far from creditors. Mathis, 50 B.R. [482 (Bankr.E.D.Ark. 1985)] at 487. Similarly, dismissal of a case after it has appeared that the debtor failed to account honestly for his assets is not to be sanctioned, for such a failure indicates the likelihood of further questionable practices to the detriment of creditors. As stated in Klein,
It may be reasonably inferred from debtor's questionable behavior inside of [sic] bankruptcy that such conduct will persist in derogation of the creditor's rights in the event this court were to order the dismissal of debtor's petition.
39 B.R. at 533.
Similarly, a strong possibility that additional assets of the estate may be discovered argues against dismissal and for retention of jurisdiction in order to assure the equitable and full distribution of newly discovered assets and voidable transfers to all creditors. In re Klein, 39 B.R. at 533; In re Ross, 21 B.R. 5 (Bankr.E.D.N.Y.1982).
In the end, the Court is to assess the vagaries of each case. (58 B.R. at 925-26).
*442 Dismissal for cause under section 707(a) is not limited to the three examples enumerated within the section. (H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 94 (1978)) (the types of cause enumerated in that section are "not exhaustive, but merely illustrative"). See, In re Zick, 931 F.2d 1124, 1126 (6th Cir.1991); In re Moses, 792 F.Supp. 529, 531, n. 4 (E.D.Mich.1992) (making reference to the legislative history); In re Crooks, 148 B.R. 867, 873 (Bankr.N.D.Ill. 1993) (same) (citing In re Atlas Supply Corp., 857 F.2d 1061 (5th Cir.1988)); In re 82 Milbar Blvd., 91 B.R. 213, 221 (Bankr. E.D.N.Y.1988) (same). Accordingly the courts must engage in case-by-case analysis in order to determine what constitutes "cause" sufficient to warrant dismissal. See, In re MacFarlane Webster Associates, 121 B.R. 694, 697 (Bankr.S.D.N.Y.1990) ("The language of the statute thus requires the bankruptcy courts to determine, on a case by case basis, whether an abuse constituting cause has occurred") (citing In re Sky Group Int'l., Inc., 108 B.R. 86, 90 (Bankr.W.D.Pa. 1989)).
Courts must determine whether dismissal would be in the best interest of all parties in interest. See, In re Price, 211 B.R. 170, 172 (Bankr.M.D.Pa.1997) ("A motion to dismiss is a serious matter affecting the rights of the debtor and all creditors. At a hearing on a motion to dismiss, the court is required to consider the impact the dismissal will have on the various entities and ascertain which direction satisfies the best interest of all parties"). See also, In re Harker, 181 B.R. 326, 328 (Bankr.E.D.Tenn.1995) ("The most important consideration for the court to consider when contemplating the dismissal of a Chapter 7 case is whether the dismissal is in the best interest of creditors") (citing In re Mathis Insurance Agency. Inc., 50 B.R. 482 (Bankr.E.D.Ark.1985)); In re Astin, 77 B.R. 537 (Bankr.W.D.Va.1987) ("Critical consideration in deciding whether Chapter 7 debtor may dismiss bankruptcy case is whether dismissal would be in best interest of creditors").
Courts have considered a wide spectrum of fact patterns in determining what does or does not constitute the requisite cause. See e.g., In re Abrahams, 163 B.R. 606 (Bankr. S.D.Fla.1993) ("The death of a chapter 7 debtor is not, by itself, a reason for such a debtor's case to be dismissed") (citing F.R.Bankr.P. 1016). In re Jones, 114 B.R. 917, 926 (Bankr.N.D.Ohio 1990) ("Clearly, the issue of good faith must be determined on a case-by-case basis. . . . Under these circumstances, we find a lack of good faith which constitutes adequate cause for dismissal under 11 U.S.C. Sec. 707(a)"); In re 82 Milbar Blvd., 91 B.R. at 221 ("We hold that the mere existence of a polluted asset is not cause for dismissal pursuant to section 707(a), however, the reasonable unwillingness of a capable and prudent trustee to serve under the circumstances described herein, shall constitute cause for dismissal pursuant to section 707(a)").
The words "after notice and a hearing" must be construed under section 102(1) to mean such notice and such opportunity for a hearing "as is appropriate in the particular circumstances." The particular circumstances of a motion to dismiss include the fact that dismissal is one of the most critical determinations to be made in a Chapter 7 case, affecting the vital bankruptcy interests of all parties. Section 102(1)(B) makes clear that an actual hearing may be omitted only "if such notice is given properly" (emphasis supplied) and if a hearing is not requested timely by a party in interest or there is not sufficient time for a hearing before the act must be done.
One of the leading Supreme Court cases dealing with the requirements of due process is instructive on the meaning of notice. According to the Supreme Court in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865, 872-73 (1950):
Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case. . . . This right to be heard has little reality or worth unless one is informed *443 that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest. . . . An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.
Referring to the notice standards set forth in Mullane and its progeny, the Court in Bank of Marin v. England, 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197, 200 (1966) stated "[T]he grain of our decisions requir[es] notice before a person is deprived of property, (citations omitted), a principle that has been recognized and applied in proceedings under the Bankruptcy Act" (citing City of New York v. New York, New Haven & Hafford Railroad Co., 344 U.S. 293, 296-97, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953)). See also, In re Barton Industries, Inc. (American Bank and Trust Company v. Jardine Insurance Services Texas, Inc.), 104 F.3d 1241, 1245 (10th Cir.1997) (implementing Mullane as setting the standard for the adequacy of notice, the Tenth Circuit stated, "[t]he notice must be of such nature as reasonably to convey the required information (citations omitted) and it must afford a reasonable time for those interested to make their appearance"). Time and again the Supreme Court has reiterated that notice must be provided at a "meaningful time." See Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) and Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner).
To decide the adequacy of notice, "[c]ourts must look to the totality of the circumstances in determining whether notice was reasonable." In re Chapman, 154 B.R. 258, 263 (Bankr.N.D.Ill.1993), aff'd sub nom. Chapman v. Burton Berger & Assocs., Ltd., 159 B.R. 812 (N.D.Ill.1993), aff'd. 46 F.3d 1133 (7th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 153, 133 L.Ed.2d 97 (1995) (citing People ex rel. Hartigan v. Peters, 871 F.2d 1336, 1340 (7th Cir.1989)). "One circumstance to consider is whether the alleged inadequacy of notice prejudiced the aggrieved party." In re Chapman, 154 B.R. at 263. "Another circumstance is whether notice was given in time for the aggrieved party to take meaningful action in response to the impending deprivation of rights." Id. (citing Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978)).
Application of these standards has yielded varied results dependent upon the circumstances. See, e.g., In re Barton Industries, Inc., 104 F.3d at 1245 (an obscure reference to an agreement incorporated into the Chapter 11 plan did not provide the secured creditors with sufficient notice about the treatment of their particular class of claim or adequate information to make a reasonable judgment about the plan); In re Micro Brokers, Inc., 59 B.R. 498, 501 (Bankr.E.D.N.Y. 1985) (after allegations of tax fraud, embezzlement, and corporate misconduct were made during a dismissal hearing set by an order to show cause that limited notice, the bankruptcy court denied the motion "because granting dismissal of the bankruptcy would violate the creditors' right to be heard under Bankruptcy Rules 1017 and 2002(a)"); but see, In re Drexel Burnham Lambert Group, Inc. (Drexel Burnham Lambert Group, v. Claimants Identified on Schedule 1), 995 F.2d 1138, 1144 (2d Cir.1993) (in approving a Chapter 11 proposed settlement of claims which did not include all terms of settlement agreement, the court concluded that under Mullane "notice is adequate so long as it is reasonably calculated to apprise the parties of the terms of a proposed settlement and the options available in connection with the judicial proceeding") (citing Weinberger v. Kendrick, 698 F.2d 61, 70 (2d Cir.1982), cert. denied, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983)).
With this background in mind, it is clear that the boilerplate warning legend in the Notice of Commencement of Case, stating that the case may be dismissed ex parte if the debtor fails to attend a section 341 meeting, does not even arguably comply with the requirement of "notice and a hearing" *444 in section 707(a). The Notice of Commencement of Case cannot be deemed "notice" of an event which has not yet happened, which parties in interest may not know about and which, if it does happen in the future, may nevertheless not constitute "cause" by reason of other circumstances affecting the rights either of the debtor or creditors.
Obviously the purpose of "notice and a hearing" is to enable parties to respond to the facts and law tendered in support of the motion. Parties oppose a motion by refuting the movant's facts or bringing additional facts or law to the court's attention. As a practical matter, how and when are debtors or creditors supposed to respond to an ex parte motion to dismiss based solely upon the Notice of Commencement of Case? Must they, after receiving a Notice of Commencement of Case, file a protective, hypothetical opposition to dismissal in case the debtor should fail to attend a 341 meeting and, further, in case the trustee should decide that some future state of facts constitutes "cause" for dismissal? Creditors need not and often do not attend 341 meetings and may not even know of the debtor's failure to attend. Even if creditors do learn of the debtor's default, they will not know of the trustee's ex parte decision to move and they will not have an opportunity to respond to the facts asserted in the ex parte motion. The debtor, of course, should know that he has failed to attend the 341 meeting. But human experience demonstrates that there may be a host of legitimate reasons for a debtor to miss the meeting, or to misunderstand or overlook his section 341 obligation, or otherwise not realize that his failure to attend will provoke an ex parte dismissal (viz., the facts in this case). In short, the Notice of Commencement of Case cannot be considered "notice" under section 707(a) because it does not give any party in interest any practical means to oppose dismissal once the trustee decides that a debtor's failure to attend a 341 meeting warrants an ex parte motion.
A debtor's failure to attend one or more 341 meetings may or may not constitute "cause" for dismissal depending on the circumstances. The circumstances of this case are illustrative. But even if a debtor's default constitutes "cause" as against the debtor, it may not warrant dismissal if this would prejudice the rights of creditors. Indeed, a creditor may view the debtor's very refusal to attend 341 meetings as evidence of the need for the bankruptcy court to retain jurisdiction for the protection of creditors. In such a case the debtor's contumacy can be dealt with in ways other than dismissal, such as contempt sanctions or denial of the debtor's discharge.
The point is, the bankruptcy court cannot make a determination of "cause" for dismissal without all of the facts which may be presented by the parties in interest. It is for the bankruptcy court, not the Chapter 7 trustee or any other party, to make decisions affecting all parties' rights. The purpose of the "notice and a hearing" requirement of section 707(a) is to enlighten the court's determination of "cause" by the adversary process. That purpose is subverted by ex parte practice in which the movant alone decides what facts will be presented to the court. The adversary system cannot exist without meaningful notice and a meaningful opportunity to be heard in opposition.
The Trustee argues that the Debtor's failure to appear at two scheduled 341 Meetings constituted cause for dismissal under section 707(a). In the abstract, a debtor's failure (or rather, refusal) to attend two 341 meetings would constitute cause for dismissal. But important determinations in bankruptcy cases cannot be made in the abstract. A finding of "cause" must be made upon all relvant facts, as illustrated by this case in which the facts clearly did not constitute cause for dismissal.
The Trustee's principal argument is "that it would be incredibly burdensome if the motion to dismiss had to be filed on notice" and that the "practice of obtaining an ex parte Order to dismiss . . . where Debtor is represented by legal counsel is a fair and sufficient practice and is necessary in order to administer a Chapter 7 Trustee's caseload." Expediting the administration of cases may be laudable, but the procedures implemented to do so must conform with the precepts of due process. In re General Order *445 Governing Dismissal of Cases, Imposition of Sanctions for Incomplete Filings (Standing Motion of U.S. Trustee to Dismiss Bankruptcy Cases), 210 B.R. 941, 943-44 (Bankr.M.D.Pa.1997) addressed this tension between expeditious administration and due process by eradicating a procedure of dismissing bankruptcy cases by a "standing motion" of the UST requesting dismissal of any case in which the filing requirements of section 521(1) were not fulfilled and a "standing order" of the bankruptcy court granting such requests. Among other things, the court noted that "[e]ven if I were to reaffirm this existing procedure, I could not do so without acknowledging that the `Standing Motion' to dismiss, has not been served on either the debtor or the interim trustee." Id. at 943.
As a general we cannot accept the proposition that it is "incredibly burdensome" for Chapter 7 trustees or any other category of party to give notice to other parties of substantive motions. In the rare case where the number of creditors or the volume of motion papers really does create a burden, an appropriate order can be entered limiting notice.
But even if notice is burdensome in a particular case, the American judicial system is predicated on the adversary process and forbids ex parte communications on substantive matters by statute, rule and code of ethics. Virtually every substantive motion in American jurisprudence must be on notice to affected parties. Nothing in section 105(a) or elsewhere in the Bankruptcy Code justifies such a radical departure from fundamental procedural due process. Appellee is simply wrong in asserting that "[t]he ex parte procedure also preserves the integrity of the bankruptcy process." To the contrary, ex parte procedures affecting important rights without giving affected parties an opportunity to be heard undermine the integrity of the judicial process. See, In re School Asbestos Litigation, 977 F.2d 764, 789 (3d Cir.1992) ("For obvious reasons of adversarial fairness, ex parte communications between judge and litigant are strongly disfavored"); In re Colony Square (Colony Square Company v. Prudential Insurance Company of America), 819 F.2d 272, 276 n. 12 (11th Cir.1987), reh'g denied, 833 F.2d 1021 (11th Cir.1987), cert. denied, Colony Square Co. v. Prudential Ins. Co. of America, 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 482 (1988) ("Ex parte communications generally are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing `requires a reasonable opportunity to know the claims of the opposing party and to meet them.'") (quoting In re Paradyne Corp., 803 F.2d 604, 612 (11th Cir.1986)) (quoting Morgan v. United States, 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938))); United States v. Earley, 746 F.2d 412, 416 (8th Cir.1984), cert. denied, 472 U.S. 1010, 105 S.Ct. 2707, 86 L.Ed.2d 723 (1985) ("An ex parte communication between a trial court and a government counsel `[i]n addition to raising questions of due process . . . involve[s] a breach of judicial and legal ethics. Regardless of the propriety of the court's motives in such a case . . . the practice should be discouraged since it undermines confidence in the impartiality of the court' 8B J. Moore, Moore's Federal Practice ¶ 43.03[2], at 43-23 (1983) (footnote omitted)."); United States v. Earley, 746 F.2d at 416 ("ex parte communications shadow the impartiality, or at least the appearance of impartiality, of any judicial proceedings.") (quoting Grieco v. Meachum, 533 F.2d 713 (2d Cir.1976). Ex parte communications, with exceptions not relevant here, are barred by Bankruptcy Rule 9003 and by Canon 3A(4) of the Code of Judicial Conduct, Disciplinary Rule 7-110(B) of the New York Code of Professional Responsibility and Rule 3.5 of the American Bar Association's Model Rules of Professional Conduct.
Appellee's practical arguments based upon the burgeoning caseload, etc. seek relief from the wrong branch of government. The statute as enacted by Congress requires notice and a hearing. Neither the Chapter 7 Trustee, nor the UST, nor the Clerk of the Court, nor even the Court can ignore the statute to lighten the burden on Chapter 7 trustees. See, Louisiana Pub. Serv. Comm'n v. F.C.C., 476 U.S. 355, 374-76, 106 S.Ct. 1890, 1901-03, 90 L.Ed.2d 369, 385, 386 (1986) ("[A federal] agency may not confer power upon itself. To permit an agency to expand its power in the face of a congressional limitation on its jurisdiction would be to grant to the agency power to override Congress. This we are both *446 unwilling and unable to do. . . . [Section] 152(b) precludes both the FCC and this Court from providing the relief sought. As we so often admonish, only Congress can rewrite this statute"); In re Chateaugay Corporation, 920 F.2d 183, 187 (2d Cir.1990) ("[I]mproving legislation by amending it is not [this court's] function; only Congress can rewrite the statute"); In re McLean Industries, Inc. (United States Lines, Inc. v. United States), 196 B.R. 670, 677 (S.D.N.Y.1996) ("Congress having spoken by its silence, this Court is not empowered to rewrite the statute") (citing Louisiana, supra); In re Pan Am Corp., 125 B.R. 372, 374 (S.D.N.Y.1991), order aff'd, 500 U.S. 946, 111 S.Ct. 2248, 114 L.Ed.2d 488 (1991) ("[A] court may not use its review of the legislative history to rewrite a statute merely because the court disagrees with the manner Congress chose to further its policy") (citing Louisiana, supra); In re Automatic Plating of Bridgeport, Inc. (Daluz v. Automatic Plating of Bridgeport, Inc.), 202 B.R. 540, 542 (Bankr.D.Conn.1996) ("courts may construe statutes, they may not reconstruct them").
The Trustee invokes the broad authority granted under 11 U.S.C. § 105 to justify the ex parte dismissal procedure for failure to attend section 341 meetings. But section 105 does not authorize a practice or procedure which is in conflict with other, express provisions of the Bankruptcy Code. As stated by the Second Circuit in F.D.I.C. v. Colonial Realty Co., 966 F.2d 57, 59 (2d Cir.1992):
In relevant part, Section 105(a) provides that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." By its very terms, Section 105(a) limits the bankruptcy court's equitable powers, which "must and can only be exercised within the confines of the Bankruptcy Code[,]" Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988), and "cannot be used in a manner inconsistent with the commands of the Bankruptcy Code." In re Plaza de Diego Shopping Ctr., Inc., 911 F.2d 820, 830-31 (1st Cir. 1990).
Simply put, where the statute requires "notice and a hearing" for a motion, the motion cannot be granted ex parte. If the appellees really believe that the increasing caseload warrants a change in the statute to ease the burdens of Chapter 7 trustees, the argument should be addressed to Congress.
To summarize, we hold that the standard form Notice of Commencement of Case with warning legend employed in the Northern District does not constitute "notice" within the meaning of sections 707(a) and 102(1) of the Bankruptcy Code, and that a Chapter 7 case may not be dismissed under section 707(a) without serving a notice of motion with appropriate supporting papers on all parties in interest, an actual hearing or opportunity to be heard, and a finding of "cause" for dismissal. The Trustee's parte motion to dismiss in this case violated section 707(a). Accordingly, the Bankruptcy Court's order of dismissal is vacated as a matter of law.
II. The Trustee's conduct
One could not construct a hypothetical to illustrate more aptly than the facts in this case the virtue embodied in the adversary system and the vice embedded in ex parte practice. If the Trustee's motion to dismiss had been made on notice to the Debtor and his attorney Croak, the Bankruptcy Court would have had before it the facts before us, which demonstrate that there was not "cause" to dismiss this case.
Croak attended both the first and second 341 Meetings. At the second 341 Meeting on February 10 the Trustee again adjourned the Debtor's case, this time to March 18. Having done so on the record in the presence of Croak, the Trustee on February 25 filed a motion to dismiss the case without informing Croak or the Debtor. Having thus "sandbagged" his adversary, the Trustee compounded the problem by failing to disclose these facts to the Bankruptcy Court. Such conduct is reprehensible on the part of an attorney, and its condonation by the UST's office is surprising at best.[5]
*447 The Trustee's filing of a misleading application with the Bankruptcy Court was a breach of his duty as an officer of the court. By not apprising the Bankruptcy Court of all relevant, material facts, the Trustee intentionally kept the Court in the dark. Such behavior is unacceptable. "An attorney's duty goes beyond not merely putting false evidence before the court; the duty is greater  the lawyer has a duty to not make misrepresentations to the court." In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 840 (Bankr.C.D.Cal.1991) (citing In re Disciplinary Action David L. Curl, 803 F.2d 1004, 1005-06 (9th Cir.1986)).
Attorneys appearing before a federal court are its officers. Burns v. Windsor Insurance Co., 31 F.3d 1092, 1095 (11th Cir.1994); United States v. Associated Convalescent Enterprises, Inc., 766 F.2d 1342, 1346 (9th Cir.1985). As such, they owe a primary duty to the administration of justice. Van Berkel v. Fox Farm & Road Machinery, 581 F.Supp. 1248, 1251 (D.Minn.1984). They owe the court and the public duties of good faith and complete candor in dealing with the judiciary. See, e.g., Windsor, 31 F.3d at 1095; Associated Convalescent, 766 F.2d at 1346; Hirschkop v. Snead, 594 F.2d 356, 366 (4th Cir.1979); Basso v. Utah Power and Light Co., 495 F.2d 906, 910 n. 1 (10th Cir.1974). In addition, as officers of the court, they have a duty to protect and preserve the right to a fair trial. Hirschkop, 594 F.2d at 366.
To fulfill such requirements, attorneys must ensure that they bring all conditions and circumstances that are relevant in a given case directly before the court. Douglas v. Donovan, 704 F.2d 1276, 1279 (D.C.Cir. 1983); United States v. Shaffer Equipment Co., 796 F.Supp. 938, 950 (S.D.W.Va.1992). "Candor to the Court, though desirable under any circumstances, is mandated in ex parte proceedings, where the Court is deprived of the benefits of the `dialectic of the adversary system.'" Eagan v. Jackson, 855 F.Supp. 765, 790 (E.D.Pa.1994) (quoting 1 Geoffrey C. Hazard & W. William Hodes, The Law of Lawyering § 3.3:501, at 619 (2d ed.1993)). Selective omission of relevant information, therefore, "exceeds the bounds of zealous advocacy and is wholly inappropriate." Montgomery v. City of Chicago, 763 F.Supp. 301, 307 (N.D.Ill.1991).
The Bankruptcy Court should have been apprised of the facts that the Debtor's attorney had appeared at both the original and the first adjourned 341 Meetings and that the Trustee had granted the Debtor a further adjournment to March 18. Since the Trustee failed to reveal the underlying facts and circumstances surrounding his ex parte motion to dismiss the Debtor's case, we vacate the order of dismissal and remand this matter to the Bankruptcy Court.
NOTES
[1] Although she took no part in the proceeding below, the United States Trustee is a named appellee and filed a brief and appendix in this appeal, relying primarily on evidentiary material not in the record. Since we decline to consider such material, the UST's submission was of limited value. Thornburgh v. American College of Ob. & Gyn., 476 U.S. 747, 821, 106 S.Ct. 2169, 2210, 90 L.Ed.2d 779 (1986).
[2] The Trustee asserts that he was following the UST's direction that panel trustees not make ex parte applications to dismiss a case until a debtor fails to appear at two scheduled 341 meetings, although the Code has no such provision. The directive applies only to debtors with counsel and not to those pro se. The debtor contends that this difference in treatment of debtors with, and without, counsel alone renders the procedure of ex parte dismissals infirm. We do not reach that issue.
[3] The entire record of that hearing is:

Trustee: "Francis Dinova, Case Number 96-16755 is reconvened to February 10, 1997 at noon."
Croak: "Okay, thank you."
[4] The entire record is:

Trustee: "Francis Dinova, Case Number 96-16755, I note the appearance of Attorney Croak, the case is reconvened to March 18th at noon."
[5] Although questions of misrepresentation and concealment were not raised by appellant, we can review them sua sponte to address a breach of professional ethics, to protect the integrity of the judicial process, or where the interest of justice requires. 11 U.S.C. § 105(a); Fed. R. Bankr.P. 9011(a); Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877-78, 49 L.Ed.2d 826 (1976); In re Griffiths, 413 U.S. 717, 727, 93 S.Ct. 2851, 2857-58, 37 L.Ed.2d 910 (1973); Ciba-Geigy Corporation v. Sidamon-Eristoff, 3 F.3d 40, 45 (2d Cir.1993); Schaafsma v. Morin Vermont Corp., 802 F.2d 629, 635-36 (2d Cir. 1986); Sheffield Commercial Corporation v. Clemente, 792 F.2d 282, 286 (2d Cir.1986); Richardson v. Hamilton Int'l Corp., 469 F.2d 1382, 1385 (3d Cir.1972); Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp., Inc., 357 F.Supp. 905, 908 (W.D.Pa.1973).