06-4450-bk, 06-5323-bk

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2007

(Argued: September 10, 2007          Decided: November 5, 2007)

Docket Nos. 06-4450-bk, 06-5323-bk
(consolidated for disposition)

————————

IN RE: SUEANN M. SMITH

————————

JEFFREY H. SCHWARTZ,

*Appellant,*

—v.—

ROBERT L. GELTZER, CHAPTER 7 TRUSTEE,

*Appellee.*

————————

*consolidated for disposition with*

————————

SUEANN M. SMITH,

*Appellant,*

— v. —

ROBERT L. GELTZER,

*Appellee.*

————————

B e f o r e :

STRAUB, KATZMANN, and B.D. PARKER, *Circuit Judges*.

_____

Appeals from orders of the United States District Court for the Eastern District of New York (Allyne R. Ross, *Judge*) affirming orders of the United States Bankruptcy Court for the Eastern District of New York (Carla E. Craig, *Chief Judge*) granting Chapter 7 trustee's motion to remove special personal injury counsel and denying debtor's motion to dismiss her bankruptcy action. No. 06-4450-bk is AFFIRMED; No. 06-5323 is VACATED.

Judge Parker concurs in the judgment of the Court and files a separate concurring opinion.

_____

DAVID J. MARK, Feder, Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine LLP, New York, NY, *for Appellant Sueann M. Smith.*

ROBERT M. GINSBERG, Ginsberg & Broome, P.C., New York, NY, *for Appellant Jeffrey H. Schwartz.*

ROBERT A. WOLF, Bryan Cave LLP (Christopher R. Strianese, *on the brief*), New York, NY, *for Appellee.*

_____

STRAUB, *Circuit Judge*:

These appeals require us to consider the extent to which a debtor who files for Chapter 7 bankruptcy protection has the ability to control the personal injury action that is the principal asset of her estate. In the proceedings below, the Bankruptcy Court – at the request of the trustee – ordered the removal of the debtor's preferred choice of special personal injury counsel and then denied the debtor's motion to dismiss her bankruptcy petition, even though she had arranged to pay all of her debts in full in an attempt to have her preferred counsel continue to prosecute the personal injury action. Under the circumstances present here, including several instances of apparent misconduct by the special personal injury counsel, we hold that the

2

Bankruptcy Court did not err in approving the trustee's request to remove that counsel. However, we also hold on the present record that the Court exceeded the bounds of its allowable discretion in denying the debtor's motion to dismiss. Accordingly, the District Court's order at issue in appeal No. 06-4450-bk is affirmed, the order at issue in appeal No. 06-5323-bk is vacated, and the case is remanded for further proceedings.

## I. Background

In April 2004, appellant Sueann M. Smith filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the U.S. Bankruptcy Code. She had debts of approximately $14,000, and a single potential asset: a personal injury claim based on a prior sledding accident in which she was blinded in one eye. All parties agree that if the personal injury claim is successfully prosecuted, recovery would likely far exceed creditors' claims against Smith.

Appellee Robert L. Geltzer was chosen to be the permanent Chapter 7 trustee representing Smith's estate, and in October 2004, the United States Bankruptcy Court for the Eastern District of New York (Carla E. Craig, *Chief Judge*) approved Geltzer's request to retain appellant Jeffrey H. Schwartz as his special counsel to prosecute Smith's personal injury action. The Bankruptcy Court ordered that the personal injury action was to be pursued on behalf of "the Trustee, Robert L. Geltzer," as opposed to the debtor directly, as is customary in bankruptcy cases. However, in January 2005, Schwartz filed a complaint in New York state court that listed Smith, not Geltzer, as the plaintiff. This was the first of a litany of errors that, when viewed together, reflect at best a lack of understanding of the bankruptcy process and at worst an effort to circumvent its requirements.

It took nine months and five separate entreaties by Geltzer before Schwartz, in October

2005, amended the caption to list Geltzer as the plaintiff. In the meantime, Schwartz brought on another attorney, Robert M. Ginsberg, to prosecute the personal injury action – without getting the approval of either the trustee or the Bankruptcy Court. After Geltzer informed Schwartz that such approvals were required under the Bankruptcy Code before Ginsberg could begin serving as trial counsel, Schwartz and Ginsberg tried to get around this requirement informally. Ginsberg sent Schwartz a letter, with a copy to Geltzer, suggesting that "you [Schwartz] can continue to remain the attorney of record – hire me as trial counsel – receive all of the mail in your office and then bring it upstairs – and simply announce that I am affiliated with your office on this case. Naturally our arrangements would remain the same." A subsequent letter from Ginsberg revealed that he had already been working on the personal injury action, including retaining an expert and preparing a bill of particulars, without the trustee's or the Bankruptcy Court's knowledge or authorization.

Geltzer then moved the Bankruptcy Court for an order removing Schwartz as special personal injury counsel and requiring Schwartz to turn over the personal injury file to a new special counsel. Smith (the debtor) filed an affidavit in opposition to the trustee's motion. She stated that she "ha[s] a substantial interest in the outcome of this case" and that she wanted Ginsberg, "one of the most highly regarded trial attorneys in the plaintiff's personal injury field," to represent the estate. While Geltzer's motion was pending, Ginsberg continued, still without authority, to prosecute the personal injury action and went so far as to file court papers representing that he was counsel to Geltzer.

On December 7, 2006, Chief Bankruptcy Judge Carla Craig held a hearing on the motion to remove Schwartz. At one point Chief Judge Craig asked the attorneys to meet in the hallway

4

to try to "work it out."  When they returned, an associate of Geltzer's told the Court that Ginsberg "came up to [him] and goes, 'Is there anything I can do to sweeten the pot?'"; Ginsberg denied making such an offer.  Three weeks later, Chief Judge Craig issued a written decision granting the trustee's motion to remove Schwartz as personal injury counsel and directing Schwartz to turn over to Geltzer "all files relating to the personal injury action."  The Bankruptcy Court entered a formal order to this effect on January 17, 2006.

In her opinion, Chief Judge Craig explained that the trustee's motion was "overwhelmingly supported by th[e] record," including that (a) Schwartz "delayed at least six months . . . before acting on the trustee's request that he amend the caption in state court"; (b) Schwartz transferred the case to Ginsberg without approval of the trustee or the Bankruptcy Court; and (c) Ginsberg worked on the case and attempted to remain as trial counsel despite the lack of trustee or court approval, thus "creat[ing] a legitimate and substantial concern in the mind of a reasonable person that this personal injury action, which was being handled by an attorney who had no authority to do so, might be settled in a similarly unauthorized fashion, possibly even without payment of the proceeds to the trustee."  Chief Judge Craig was especially concerned with the letter sent by Ginsberg suggesting that Schwartz remain as "attorney of record" while Ginsberg would act as trial counsel because such fee-splitting arrangements are prohibited under section 504(a) of the Bankruptcy Code and, without proper authorization, can constitute a violation of the New York Lawyer's Code of Professional Responsibility.  "It is appalling, and incomprehensible," wrote Chief Judge Craig, "that Mr. Ginsberg could think it was permissible, in the absence of consent by the trustee and court approval, for him to act as counsel on [this] case and receive a fee for doing so, funneled through Mr. Schwartz as 'attorney

of record.'" Chief Judge Craig also credited Geltzer's associate's account of the exchange in the hallway and noted that Ginsberg's attempt to "sweeten the pot" "is an additional reason why the trustee is amply justified in refusing to retain him, particularly in light of Mr. Ginsberg's persistent and flagrant disregard of his obligations as an attorney." Finally, Chief Judge Craig found that whatever weight should be accorded the debtor's preference to retain Ginsberg was outweighed by the "clear evidence that Messrs. Schwartz and Ginsberg should not be retained to represent the estate."

Schwartz appealed to the District Court, which affirmed the Bankruptcy Court's decision in an opinion and order issued on August 24, 2006. Schwartz filed a timely appeal to this Court, docketed as No. 06-4450-bk, which is the first appeal we address, *infra*.

Almost immediately after the Bankruptcy Court issued its removal decision, Smith, on February 8, 2006, moved to dismiss her bankruptcy case. In support of her motion, Smith said that she still had "confidence" in Schwartz and Ginsberg and wanted to "obtain control of the prosecution of the Personal Injury Claim." "To that end," Smith "obtained a commitment from Setareh Holding Corp." whereby Setareh would provide Smith with "up to $17,500" to pay the claims of the estate in return for a lien against any recovery in the personal injury action in the amount of $17,500 plus 8.3% interest per month. Ginsberg's law firm agreed to "advance all payments for the Trustee's commission UNTIL NOW, court fees; or expenses which have been incurred," with this advance to be treated as a disbursement to be deducted from the total settlement or judgment of the personal injury litigation without interest. Smith argued that with these arrangements, dismissal of her Chapter 7 petition would be in her best interest, would satisfy her creditors, and "no one will suffer any prejudice."

While Smith's motion was pending, Schwartz and Ginsberg refused to turn over the personal injury file to Geltzer – in defiance of the Bankruptcy Court's January 17, 2006 order – and Ginsberg continued to prosecute the personal injury action, including filing responses to discovery requests.[1]

Geltzer, as trustee, opposed Smith's dismissal motion on multiple grounds, including that (1) the creditors were provided with "no certainty, at all, that they will be paid by the Debtor"; (2) dismissal would be against Smith's best interests due to Ginsberg's record of "incompeten[ce]" and "dishonest[y]" and because Setareh's interest rate "is significantly greater than the Federal interest rate of 1.5% [per annum]"; and (3) he, as trustee, would be disadvantaged by dismissal because there was no agreement as to what fees he would be entitled to receive, and the proposed deal provided a commission for his work only "UNTIL NOW," which at that time amounted to zero dollars. Geltzer argued that "[i]t appears that Ginsberg is effectively trying to buy a dismissal of the Debtor's bankruptcy case, and eliminating the role of the federal bankruptcy trustee, trusting to the Debtor to pay her creditors, all so Ginsberg can line his own pockets with the proceeds of the Debtor's personal injury action at the Trustee's expense."

At the end of a hearing held on March 15, 2006, the Bankruptcy Court denied the motion to dismiss. Chief Judge Craig explained that she would "ordinarily give . . . a lot of weight or at least some substantial weight" to Smith's desire to be represented by Schwartz and Ginsberg, but ultimately concluded that, given the attorneys' "extraordinary record of . . . incompetence,"

---

[1] After learning that Schwartz and Ginsberg had not complied with its turnover order, the Bankruptcy Court held the attorneys in contempt of court and ordered them to pay a fine and a portion of the trustee's attorneys' fees.

7

"absolute refusal to obey Court orders," and "failure to recognize [their] ethical requirements," it was not in Smith's best interest to be represented by them. Chief Judge Craig cited the attempt by Schwartz and Ginsberg to enter into a fee-sharing arrangement without authorization, their refusal to comply with the Court's turnover order, and the fact that they continued to "hold themselves out as . . . functioning . . . attorneys in this case after they had been discharged."

During the course of the hearing, Chief Judge Craig rejected the trustee's argument that lack of certainty that the debts would be paid meant that dismissal would not be in the best interest of Smith's creditors, given that the Bankruptcy Court could "work out a mechanism where the monies [advanced by Setareh] are distributed under [the Court's] supervision." But Chief Judge Craig provided two additional reasons for her decision. First, she found it "hard . . . to see why someone would" agree to Setareh's terms, which provided for an interest rate far greater than what Smith would be subject to in bankruptcy, thus giving rise to a "concern" that Smith "has been imposed upon by [Schwartz and Geltzer]." (However, even though Smith was present in the courtroom during the hearing, she was not asked to testify.) Second, the parties continued to dispute the amount that would be owed to Geltzer as trustee if the dismissal were to be granted, thus "fostering additional litigation over Mr. Geltzer's fees and over the commission amounts."

Smith appealed to the District Court, which affirmed the Bankruptcy Court's decision. The District Court reasoned that "a debtor's ability to repay creditors" is not, by itself, "adequate cause justifying dismissal," but rather is "part of the required inquiry into 'whether dismissal would be in the best interest of all parties in interest.'" The District Court concluded that the Bankruptcy Court had acted within its allowable discretion because its decision was "based on a

proper assessment of the vagaries of the case and not on any clearly erroneous facts or errors of law."

Smith filed a timely appeal to this Court, docketed as No. 06-5323-bk, which is the second appeal we address herein.

## II. Discussion

Where, as here, a district court acts in its capacity as an appellate court in a bankruptcy case, the district court's decisions are subject to plenary review. *Dairy Mart Convenience Stores, Inc. v. Nickel (In re Dairy Mart Convenience Stores, Inc.)*, 411 F.3d 367, 371 (2d Cir. 2005); *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1388 (2d Cir. 1990). We thus review independently the factual findings and legal conclusions of the bankruptcy court, accepting its findings of fact unless they are clearly erroneous and reviewing its conclusions of law de novo. *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 90 (2d Cir. 2003); *Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 29 (2d Cir. 1995).

### A. The Removal of Schwartz as Special Counsel

We first consider the Bankruptcy Court's decision granting Geltzer's motion to remove Schwartz as special personal injury counsel. A bankruptcy trustee's ability to hire professionals is governed by section 327(a) of the Bankruptcy Code, which permits the trustee to employ an attorney to assist in his duties "with the court's approval," so long as the attorney to be hired "do[es] not hold or represent an interest adverse to the estate, and [is a] disinterested person[]." 11 U.S.C. § 327(a). Under this provision, a trustee's choice of special counsel is subject to the evaluation and approval of the bankruptcy court. *See Pryor v. Ready & Pontisakos (In re*

9

*Vouzianas)*, 259 F.3d 103, 107-08 (2d Cir. 2001). In exercising its approval function, however, the bankruptcy court should interfere with the trustee's choice of counsel "'[o]nly in the rarest cases,'" such as when the proposed attorney has a conflict of interest, or when it is clear that "'the best interest of the estate'" would not be served by the trustee's choice. *Id.* at 108 (quoting *In re Mandell*, 69 F.2d 830, 831 (2d Cir. 1934)). Courts give the trustee such deference in choosing special counsel because of the "'highly confidential' relationship between the special counsel-attorney and the trustee-client." *Id.* (quoting *Mandell*, 69 F.2d at 831).

Importantly, the special counsel represents the trustee, not the debtor. *See id.* Thus, section 327(a) does not give a bankruptcy court authority to reject a trustee's choice of counsel solely because of an objection by the debtor. Rather, the debtor's objection is relevant only to a bankruptcy court's consideration of the best interest of the estate, or of whether the chosen special counsel is conflicted.

Applying these principles here, we find no error in the Bankruptcy Court's determination that there were "no circumstances" that would give it reason to interfere with Geltzer's decision to remove Schwartz as special personal injury counsel. There was no indication or allegation that the attorney with whom Geltzer chose to replace Schwartz was conflicted or unqualified to litigate the personal injury action, and ample evidence supported the Bankruptcy Court's conclusion that the best interest of the estate would not be served by requiring Geltzer to continue to be represented by Schwartz, including, *inter alia*, Schwartz's delay in amending the state court caption and his transferring the personal injury file to Ginsberg without court or trustee approval. Indeed, the only factor weighing in favor of rejecting Geltzer's motion was Smith's preference to have Schwartz and Ginsberg prosecute the personal injury action. But that

10

preference alone is insufficient to turn this into one of the "rarest cases" in which interference with the trustee's choice could be justified. *Pryor*, 259 F.3d at 108.[2]

**B. The Denial of Smith's Dismissal Motion**

Motions to dismiss a bankruptcy petition are governed by section 707 of the Bankruptcy Code, which provides:

> The [bankruptcy] court may dismiss a case . . . only after notice and a hearing and only for cause, including--
> > (1) unreasonable delay by the debtor that is prejudicial to creditors;
> > (2) nonpayment of any fees and charges required under chapter 123 of title 28; and
> > (3) failure of the debtor in a voluntary case to file, within fifteen days . . . the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a). Although this provision does not specifically provide for a debtor's motion to dismiss a voluntarily-filed petition, courts have routinely held that section 707(a) applies to such cases. *See, e.g.*, *Turpen v. Eide (In re Turpen)*, 244 B.R. 431, 434 (B.A.P. 8th Cir. 2000); *In re Schwartz*, 58 B.R. 923, 925 (Bankr. S.D.N.Y. 1986); *In re Klein*, 39 B.R. 530, 532 (Bankr. E.D.N.Y. 1984). Under section 707(a), "the debtor has no absolute right to dismissal of a Chapter 7 case." *Turpen*, 244 B.R. at 434; *see also In re Klein*, 39 B.R. at 532. Rather, a debtor seeking dismissal must show "cause." 11 U.S.C. § 707(a); *see Dinova v. Harris (In re Dinova)*, 212 B.R. 437, 442 (B.A.P. 2d Cir. 1997). However, the Bankruptcy Code does not define "cause," and the three examples given in section 707(a) are illustrative, not exclusive. *See Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1191 (9th Cir. 2000); *Dionne v. Simmons (In re*

---

[2] Schwartz argues that the Bankruptcy Court improperly relied on the "unsubstantiated" allegation that Ginsberg offered to "sweeten the pot." As the Bankruptcy Court's opinion makes plain, however, this incident was not the basis for its decision, but was only an "additional reason" supporting the trustee's desire to remove Schwartz; we have no doubt the Bankruptcy Court would have granted Geltzer's motion even had it disregarded Ginsberg's alleged remark.

*Simmons)*, 200 F.3d 738, 743 (11th Cir. 2000).

Where, as here, a debtor moves for dismissal, courts in this Circuit have determined whether cause exists by looking at "whether dismissal would be in the best interest of all parties in interest." *Dinova*, 212 B.R. at 442; *see also In re Schwartz*, 58 B.R. at 925; *In re Hull*, 339 B.R. 304, 307 (Bankr. E.D.N.Y. 2006). We agree that this is the appropriate analysis. The best interest of the debtor "lies generally in securing an effective fresh start upon discharge and in the reduction of administrative expenses leaving him with resources to work out his debts." *Dinova*, 212 B.R. at 441 (quotation marks omitted). With regard to creditors, the issue is typically one of prejudice: "[C]reditors can be prejudiced if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting the amounts owed to them. A prejudicial delay also creates the appearance that such an abusive practice is implicitly condoned by the Code." *Id.* (quotation marks omitted).

Because the weighing of these factors "is guided by equitable considerations," the determination of whether cause exists is "committed to the sound discretion of the bankruptcy court." *In re Hull*, 339 B.R. at 308; *see also* 6 Collier on Bankruptcy § 707.03 (15th ed. rev. 2006) ("The court has substantial discretion in ruling on a motion to dismiss under section 707(a), and in exercising that discretion must consider any extenuating circumstances, as well as the interests of the various parties."). Accordingly, we will disturb a decision to deny dismissal under section 707(a) only if the bankruptcy court has exceeded the bounds of the discretion afforded by the statute. *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1307 (2d Cir. 1996) (noting that "decisions [that] invoke the exercise of a bankruptcy court's equitable powers," and are thus "dependent upon the facts and circumstances of each case," are

12

reviewed for an excess of allowable discretion). A bankruptcy court exceeds its allowable discretion where its decision (1) "rest[s] on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding," or (2) "cannot be located within the range of permissible decisions," even if it is "not necessarily the product of a legal error or a clearly erroneous factual finding." *Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 678 (2d Cir. 2003) (internal quotation marks omitted).

We begin our analysis of the Bankruptcy Court's decision with a threshold question: can a debtor's ability to repay her creditors constitute adequate cause for dismissal? A frequently cited passage of the legislative history of section 707(a) appears to answer this question in the negative: "[This] section does not contemplate . . . that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy." S. Rep. No. 95-989, at 94 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5880; H.R. Rep. No. 95-595, at 380 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6336. Several courts have relied on this passage to conclude that a debtor's ability to repay her debts cannot constitute cause for dismissal. *See, e.g.*, *Turpen*, 244 B.R. at 434-35; *In re Stephenson*, 262 B.R. 871, 875 (Bankr. W.D. Okla. 2001); *Kirby v. Spatz (In re Spatz)*, 221 B.R. 992, 994 (Bankr. M.D. Fla. 1998); *In re Williams*, 15 B.R. 655, 657-58 (E.D. Mo. 1981). Other courts have held that section 707(a)'s legislative history indicates that the provision was not intended to apply when it is the debtor – as opposed to a creditor or another party – who seeks dismissal. *See In re Aupperle*, 352 B.R. 43, 47 (Bankr. D.N.J. 2005) ("[T]he entire excerpt [of the legislative history] refers to circumstances justifying cause for involuntary dismissal sought by a party other than the

13

debtor.").

We agree with the latter view. Congress's fear of enacting "a non-uniform mandatory chapter 13" makes sense only in the context of an involuntary dismissal. If a creditor is permitted to base a motion for Chapter 7 dismissal on the debtor's ability to repay her debts, the debtor may have no other choice but to file a Chapter 13 petition (under which debtors are required to pay off their debts over a set period of time, *see* 11 U.S.C. §§ 1301 et seq.) or to avoid bankruptcy altogether, thus potentially creating a "non-uniform mandatory Chapter 13." There is no such risk when it is the debtor who seeks dismissal voluntarily.[3]

We therefore hold that the legislative history of section 707(a) does not preclude a debtor's ability to repay her debts from constituting cause for dismissal. This does not mean, however, that a debtor's ability to repay her debts is *per se* grounds for dismissal. Rather, we agree with the District Court that "the significance of [a debtor's] ability to repay her creditors is merely a[] part of the required inquiry into 'whether dismissal would be in the best interest of all

---

[3] When section 707(a) was enacted as part of the Bankruptcy Reform Act of 1978 (the "1978 Act"), an individual debtor with primarily consumer debts could generally choose whether to seek a complete discharge of his debts under Chapter 7 or to reorganize those debts under Chapter 13. *See* Pub. L. No. 95-598, § 706 (1978) (current version at 11 U.S.C. § 706) ("The debtor may convert a case under [Chapter 7] to a case under chapter 11 or 13 of this title at any time . . . . The court may not convert a case under [Chapter 7] to a case under chapter 13 of this title unless the debtor requests such conversion."). This freedom to choose between Chapter 7 and Chapter 13 was somewhat curtailed by the 1984 amendments to the 1978 Act, *see* Pub. L. No. 98-353, § 312(2) (1984) (current version at 11 U.S.C. § 707(b)), which permitted courts to dismiss a Chapter 7 petition upon a finding of "substantial abuse" by the debtor, and was substantially curtailed by the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005," which amended section 707(b) of the Bankruptcy Code to, *inter alia*, prevent individuals whose income is above a certain threshold from discharging their debts through Chapter 7. *See* Pub. L. No. 109-8, § 102(a) (2005) (amending 11 U.S.C. § 707(b)). These revisions do not affect our interpretation of the legislative history of section 707(a) of the 1978 Act. We also note that the 2005 amendments do not apply to Smith's case because her bankruptcy petition was filed prior to October 17, 2005. *See* Pub. L. No. 109-8, § 1501 (2005).

parties in interest.'" *Smith v. Geltzer (In re Sueann M. Smith)*, No. 06 CV 2994, slip. op. at 9 (E.D.N.Y. Oct. 18, 2006) (quoting *Dinova*, 212 B.R. at 442).

Here, the Bankruptcy Court provided three reasons for its conclusion that Smith's proposal to repay her creditors in full did not constitute adequate cause for dismissal: first, it was not in Smith's best interest to be represented by Schwartz and Ginsberg; second, the parties' failure to agree on Geltzer's appropriate fees and commission would needlessly create additional litigation; and third, there was a "concern" that Smith had been "imposed upon" by Schwartz and Ginsberg. While we are sympathetic to the Bankruptcy Court's desire to protect Smith from the consequences of her own choices, its reasons are insufficient to justify denial of Smith's dismissal motion, at least on the record that was before the Court.

First, dismissal would clearly have benefitted Smith's creditors. In responding to this appeal, the trustee reiterates the argument – rejected by the Bankruptcy Court – that dismissal would result in "substantial prejudice" to Smith's creditors because "nearly two years have passed since the commencement of the Bankruptcy Case." This argument is wholly without merit. Under Smith's proposed arrangement, all of her creditors would be paid in full, including interest, immediately, whereas without dismissal, the creditors will have to wait for the completion of the personal injury action before being paid, and if that action proves unsuccessful, they will receive nothing. We believe it to be indisputable that dismissal under Smith's proposal – assuming that the Bankruptcy Court supervises the disbursement of the monies advanced by Setareh – would be in the best interest of Smith's creditors.

Second, in determining that dismissal was not in Smith's best interest, the Bankruptcy Court focused on the misconduct of Schwartz and Ginsberg and gave almost no consideration to

15

the most important factor in the analysis: whether the debtor is able to secure "an effective fresh start," *Dinova*, 212 B.R. at 441 (quotation marks omitted). While the Bankruptcy Court may be correct that the trustee's choice of counsel would do a better job of prosecuting the personal injury action than would Schwartz and Ginsberg, under Smith's proposed arrangement, her ability to secure an effective fresh start – with all of her debts paid – would be unaffected by whether the personal injury action proves successful. Thus, the Bankruptcy Court's concerns about Schwartz and Ginsberg are unrelated to that aspect of the debtor's interest that is most relevant to the dismissal inquiry.

We do not intend to imply that it was inappropriate for the Bankruptcy Court to have considered Smith's long-term financial interests, including whether remaining in bankruptcy would afford her more competent counsel to prosecute the personal injury action and possibly allow her to retain a greater interest in the eventual proceeds from that action. These factors are certainly relevant to an analysis of the debtor's interests. But even if these factors tilt against dismissal, they must be weighed against the ability of the debtor to secure an effective fresh start, which is of paramount importance to the dismissal inquiry. *See id.*

On remand, the Bankruptcy Court should consider both the benefits of Smith's proposed arrangement – including that it would allow her to pay off her creditors immediately, and also allow her to avoid the harms of discharging her debts through bankruptcy, such as the potential difficulty of securing future credit and the inability to receive Chapter 7 relief again for eight years, *see* 11 U.S.C. § 727(a)(8) – and the arrangement's potential costs – including that the high rate of interest charged by Setareh could reduce significantly any judgment or settlement amount eventually secured by Smith.

16

The debtor's best interest also lies in "the reduction of administrative expenses," *Dinova*, 212 B.R. at 441 (quotation marks omitted), but there is no evidence in the record establishing what Smith's administrative costs would be under her dismissal proposal. As a result, the Bankruptcy Court had no basis on which to determine how such costs compare to those that Smith would incur if she remained in bankruptcy proceedings. On remand, the Court should make such a determination based on evidence submitted by the parties. We note that potential litigation over the trustee's fees should not, by itself, constitute a basis for denying a dismissal motion that would otherwise benefit both the debtor and her creditors. The Bankruptcy Court could hold an expedited hearing to determine what is owed to the trustee and could make dismissal contingent on Smith's willingness and ability to pay that amount.

The Bankruptcy Court's final reason for its decision was its concern that Smith had been "imposed upon" by Schwartz and Ginsberg. If it were true that Smith moved for dismissal only under duress or out of a lack of understanding as to what she was proposing, that would surely be grounds for denying the motion. Smith, however, was represented by independent counsel when she brought the motion, and she was present in the courtroom during the dismissal hearing, when the proposed arrangement was discussed in detail. Moreover, while Setareh's interest rate was far higher than the federal interest rate, it was not necessarily unreasonable for Smith to accept Setareh's terms given that Setareh would receive nothing if the personal injury action were unsuccessful. Accordingly, we cannot on this record credit the Bankruptcy Court's suggestion that Smith, in choosing to move for dismissal, may not have been acting voluntarily or in what she believed were her best interests.

We therefore conclude that, on the record that was before it, the Bankruptcy Court's

17

denial of Smith's dismissal motion "cannot be located within the range of permissible decisions," *Schwartz*, 352 F.3d at 678, and its order should have been vacated by the District Court. However, because the Bankruptcy Court's concern that Smith may not have been fully informed or acting freely is not unfounded, and because the issue of the trustee's fees and commissions is still unsettled, the proper course is to remand the case to the Bankruptcy Court for it to reconsider its dismissal decision and determine, in conjunction with any notice and hearing that may be appropriate, (1) whether Smith fully understands the terms and consequences of her dismissal proposal, including the significant difference between the federal interest rate and that charged by Setareh; (2) the proper amount owed to the trustee, and whether Smith is willing and able to pay that amount; and (3) the appropriate mechanism by which to ensure that the trustee's fees and commission are paid and that all of Smith's creditors are repaid in full plus interest. If all of these conditions are satisfied, the fact that Smith will be able to immediately pay all debts and fees – and thus "secur[e] an effective fresh start," *In re Dinova*, 212 B.R. at 441 – should weigh heavily in favor of granting the dismissal motion.

### III. Conclusion

For the foregoing reasons, we affirm the District Court's order upholding the Bankruptcy Court's decision to remove Schwartz as special personal injury counsel, and vacate the District Court's order affirming the Bankruptcy Court's denial of Smith's dismissal motion. We remand the case to the District Court with instructions to (a) vacate the Bankruptcy Court's order denying dismissal, and (b) return the case to the Bankruptcy Court for further proceedings consistent with this opinion.

18

BARRINGTON D. PARKER, *Circuit Judge*, concurring:

I concur in the judgment and in the majority's opinion, except that I do not agree that the Bankruptcy Court's denial of Appellant Smith's motion to dismiss constituted an abuse of discretion. Where, as here, the standard of review is abuse of discretion, the lower court's "findings and conclusions must . . . at least be sufficient to permit meaningful appellate review; and where such findings and conclusions are lacking, we may vacate and remand." *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999). That is exactly the situation presented to us. I believe that the current record is insufficiently developed for us to determine whether the Bankruptcy Court's conclusion was within the scope of its broad discretion, and that vacatur for further consideration is warranted. This disposition leaves the door open on remand for the Bankruptcy Court to reach a different, or the same, conclusion, with either result having the benefit of a more fully developed record. In view of these possibilities, I believe that it is both inappropriate and inaccurate to characterize the earlier actions of the court below as an abuse of discretion.