In re Dale R. BROOKOVER, Cynthia Brookover, Debtors.

In re Montgomery Farms, Debtor.

In re Jack Guilitto, Jacquelynn Guilitto, Debtors.

No. 00–52012, 95–50187, 93–51659.

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

March 26, 2001.

Glenn J. Schwartz, Girard, OH, for debtors.

Michael V. Demczyk, Uniontown, OH, trustee.

Donald M. Robiner, Cleveland, OH, United States Trustee.

## MEMORANDUM OF OPINION AND ORDER

MARILYN SHEA-STONUM,
Bankruptcy Judge.

On February 16, 2001, the Motion To Reconsider this Court's Order of November 28, 2000, filed on December 7, 2000, by Donald M. Robiner, United States Trustee, Ohio/Michigan Region 9, (the "UST"), together with his Memorandum in Support of the Motion to Reconsider, filed on January 23, 2001, came on for hearing. Present at the hearing were Dean Wyman, Acting Assistant UST; John L. Daugherty, Trial Attorney for the Executive Office of United States Trustees; and, Michael V. Demczyk, standing chapter 12 Trustee for the Eastern Division of the Northern District of Ohio (the "Trustee").

At issue was the purported resignation of the Trustee from the above-captioned chapter 12 cases presently pending before this Court and the proper procedure to be followed by a trustee in resigning from a pending case. The issue is not whether the UST has initial power to appoint a standing or *ad hoc* chapter 12 trustee, as that appointment power is created by statute and plainly is that of the UST in this District, 28 U.S.C. § 586, but what the respective roles of the UST, the chapter 12 trustee and the Court are in the oversight of pending cases. In one sense, this appears to be a narrow issue. However, it raises central questions of the roles of various statutory players on the bankruptcy stage.

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984 and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334.

## I. BACKGROUND

This issue arose subsequent to the following correspondence:

On November 7, 2000, the UST sent a letter to the Trustee, with copies to the Bankruptcy Judges, Clerk and Deputy Clerks in Charge of the four court locations for the Northern District of Ohio, Eastern Division, and certain individuals in the UST's office in Cleveland. In the letter, the UST purported to accept the resignation of the Trustee using the following language:

> I have received your letter of resignation as Chapter 12 Standing Trustee dated October 31, 2000 which indicates that the resignation will be effective November 30, 2000. I accept your resignation and thank you for your years of service as the Chapter 12 Standing Trustee for the Eastern Division of the Northern District of Ohio. There have been insufficient Chapter 12 case filings over the past few years to support a Standing Trustee operation, and we appreciate your willingness to administer these cases for minimal compensation. Notice will be filed with the Bankruptcy Court in each case of your resignation and my appointment as Chapter 12 interim trustee. My staff will be in contact with you regarding the transition of funds and files to our office. We anticipate your full cooperation in this regard and in the filing of your final annual report....

On the same date, November 7, 2000, the UST sent a letter to me [1], with a copy

---

1. The failure of the UST to frame this letter as a pleading in each of the above-captioned cases with appropriate service to parties in interest violated Fed. R. Bankr.P. 9003(b). Based on instructions from chambers, the

to Joyce Garner, Deputy Clerk in Charge in Akron, stating:

> Enclosed for your information is a copy of my letter accepting the resignation of Michael Demczyk as Chapter 12 Standing Trustee for the Eastern Division of the Northern District of Ohio. There are no longer sufficient Chapter 12 cases to justify a Standing Trustee under 28 U.S.C. § 586(b). On the active Chapter 12 cases, we anticipate appointing successor individual case trustees under 11 U.S.C. § 1202(a). These will be administered in a similar manner as Chapter 7 cases.

Copies of each of these letters were filed by this Court in the three above-captioned Chapter 12 cases pending before this Court. *In re Guilitto* [docket ## 56, 57], *In re Montgomery Farms* [docket ## 74, 75], *In re Dale and Cynthia Brookover* [docket ## 14, 15].

The UST did not file the letters with the Court, and did not serve them on any parties or attorneys having an interest in the above-captioned cases. The letters were not made a part of the Court record, except by the Court itself. (*See* n.1 *supra*). In this regard, this Court has repeatedly stated its strong view of the importance of transparency in the records of bankruptcy proceedings. The parties in interest have a right to review the files to ascertain what is happening in cases that affect them. Such transparency is a central factor in assuring that debtors, creditors and others involved have faith in the bankruptcy system and can make sense of its procedures.

The Court was presented only with these two, short and not very informative letters. It was given no additional information concerning the circumstances under which the purported resignation was tendered and little information on the UST's plan to name a successor trustee. Thus, the Court, and certainly the parties in interest, were left in the dark regarding how these cases were to go forward and with whose help in the meantime. It was within this informational vacuum, and the suppositions that such a vacuum could allow, that the Court was left to act.

On November 28, 2000, this Court issued an identical Order in each of the above-captioned cases which was served on the Trustee, the UST and the attorneys for the chapter 12 debtors, stating, in pertinent part:

> Michael V. Demczyk is the Standing Chapter 12 Trustee in this case. The Court recently received correspondence from Donald M. Robiner, United States Trustee, Ohio/Michigan Region 9, which consists of two letters dated November 7, 2000 (the "Letters") . . . The Letters raise a question about whether Mr. Demczyk wishes to continue to serve as the Chapter 12 Trustee. If a change is requested, the Court will await a motion filed and served on all parties in interest. *See* 11 U.S.C. § 324. Mr. Demczyk is to continue to carry out his responsibilities in this case, absent a Court Order to the contrary.[2]

On December 7, 2000, the UST filed his Motion to Reconsider[3] and on January 23,

---

Clerk's office docketed copies in each of the above-captioned cases.

**2.** Had such a motion been filed, this Court would have held a hearing, following notice to parties in interest, to determine the basis for allowing the Trustee to cease functioning in these cases and the views of interested parties with respect to what would best serve the interests of holders of claims and the debtors-in-possession of the farms. If at such a hearing evidence similar to that elicited at the February 16th hearing were presented,

this Court would have determined that there was nothing to justify allowing the Trustee's resignation from the pending cases. This observation is merely based upon the information now available to the Court and is without prejudice to the right of any party with standing to address the continuing role of Mr. Demczyk in these cases.

**3.** Following the entry of the November 28, 2000 Order by this Court, the UST apparently decided to abate his replacement of the Trustee in cases pending in other Court locations

2001, he filed a Memorandum In Support of the Motion to Reconsider ("Mem. in Supp."). A hearing on the Motion to Reconsider was held on February 16, 2001. At the hearing the Court was shown, for the first time, the Trustee's letter of October 31, 2000, to the UST purporting to resign as Trustee. The letter stated:

> Please accept my resignation as the standing Chapter 12 trustee for the Northern District of Ohio, Eastern Division, effective November 30, 2000. I have previously discussed this matter with your staff regarding an orderly transition of accounts, files, and other assets which might pertain to this trusteeship.
>
> Therefore, whatever I can do to assist this transition and make it as efficient as possible, please do not hesitate to contact me at your earliest convenience.

At the hearing no suggestion was made by any participant that the Trustee had done anything other than commendable work although two of the cases plainly have been pending for more than five years.[4] In addition, this Court has observed that this Trustee has many years of experience with farming issues and brings a significant understanding of the business of farming to his office.[5] Whether the UST intends to continue to use the Trustee's knowledge in the future is entirely the concern of the UST, but this Court notes that the Trustee has served this area well.[6]

The Court knows of no notices filed prior to the February 16, 2001 hearing or otherwise delivered to parties in interest in any of the pending cases that would have informed them of the purported change in the Trustee or that a hearing on the issue had been scheduled. It is the Court's strong belief that debtors, creditors and other interested parties have a right to know what is happening in their cases and who they can turn to for information and guidance. Changing horses in mid-stream is unsettling to those involved and, in these pending cases, unwarranted and unnecessary.

Following the hearing, and with leave of Court, on March 2, 2001, the UST filed a Supplemental Memorandum in Support of Motion to Reconsider ("Supp. Mem."). In his Motion to Reconsider, his Memorandum in Support and his Supplemental Memorandum in Support, the UST argues that the procedure used by the Trustee to resign from his pending cases was proper. The UST asserts that, because the Trustee was appointed by the UST, common law recognizes that the authority to accept the resignation of a public officer rests with the person, in this case the UST, who has the power to appoint a successor. The UST relies on common law stating that the "Bankruptcy Code and Rules are silent on the mechanics of resignation." Mem. in Supp. at 4. In addition the UST states that a trustee's designation as "an officer of the court" does not give the Bankruptcy

---

in the Eastern Division of this District. Accordingly, copies of this decision are being provided to my colleagues on the U.S. Bankruptcy Court for the Northern District of Ohio.

4. This matter will be addressed in status conferences now being scheduled on the Court's own Motion in each of these two cases.

5. The Court notes that, despite Mr. Demczyk's experience, neither he nor the UST have much experience with resignation from the office of case trustee, at least in Akron. The issue raised in this case will arise infrequently. The UST, through his Motion for Recon-

sideration, has focused attention on what should be done in these circumstances and by whom.

6. There was a suggestion in the letter from the UST to the Trustee that the UST himself would serve as chapter 12 trustee in the future. While there is statutory authority for him assuming such duties, 11 U.S.C. § 1202(a), given the current understaffing of the Region 9 office, the Court cannot help but wonder whether the substantive knowledge of the farming industry similar to that which the Trustee brought to the office of standing chapter 12 trustee can be remotely duplicated by such an approach.

Court authority to prevent a trustee's resignation. Supp. Mem. at 2.

This Court disagrees. First, § 324 of the Bankruptcy Code is far from silent on the mechanics by which a trustee is removed from office, either by resignation or otherwise. Second, the various duties imposed on the UST, including that of appointing a standing chapter 12 Trustee, do not include accepting the resignation of the Trustee. In addition, multiple rules, including Ohio state rules and local rules of both the District Court and the Bankruptcy Court for the Northern District of Ohio, prescribe the behavior of "officers of the court" and mandate that the Court, in its role as superintendent of its pending caseload, be involved in the resignation process of officers of the court, including the chapter 12 standing trustee.

## II. LAW AND ANALYSIS

### A. 11 U.S.C. § 324

Section 324 of the Bankruptcy Code states:

> (a) The Court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause.
>
> (b) Whenever the court removes a trustee or examiner under subsection (a) in a case under this title, such trustee or examiner shall thereby be removed in all other cases under this title in which such trustee or examiner is then serving unless the court orders otherwise.

 This Code section pertains to the removal of a trustee or examiner.[7] It sets forth specifically the procedures to be followed when a party seeks removal of a trustee or when a trustee seeks to be removed from a pending case. By its language § 324 does not restrict the use of

this procedure to only certain, specified cases, and does not prevent its use in cases of resignation. The UST states in his Memorandum in Support that the "Bankruptcy Code and Rules are silent on the mechanics of resignation." Mem. in Supp. at 4. This statement does not recognize that the Code sets forth the manner by which a trustee may be removed from a pending case, and that is by notice to all affected parties and a hearing. 11 U.S.C. § 324, see also § 1105. In addition, section 324(b)'s language that removal from one case is removal from "all other cases in which such trustee . . . is then serving unless the court orders otherwise" underscores the role of the Court in maintaining the integrity of, and the perception of integrity in, the trustee system.

 The UST uses the Code's purported "silence" on procedure to argue that he may resort to the common law rule that "the authority to accept the resignation of a trustee rests with the person who exercises the power to appoint a successor." Mem. in Supp. at 4 (citations omitted). However, resort to common law is not proper in the face of a Code section clearly setting forth the statutory procedure to be used when either a trustee seeks, or other officer of the court or the Court seeks, the trustee's removal from a pending case. Where a statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The Court must look to the first canon of statutory construction in interpreting § 324: that "a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). "When the words of a statute are

---

7. Section 1105 also provides, in pertinent part, that "At any time before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may terminate the trustee's appointment and restore the debtor to posses-

sion . . . ." "Removal of a particular trustee or examiner is governed by section 324." 2000 Collier Pamphlet Edition, *Bankruptcy Code,* § 1105 "Relation to Other Code Sections" at 830 (1999).

unambiguous, then this first canon is also the last: 'judicial inquiry is complete.'" *Rubin v. U.S.*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981), *see also Ron Pair* at 241, 109 S.Ct. 1026.

■ In addition, resort to the common law is misplaced in the face of the UST's appointment power created by statute. The UST has initial appointment power to appoint a standing chapter 12 trustee or an *ad hoc* trustee for each chapter 12 case.[8] 28 U.S.C. § 586. However, the UST, a creature of statute, cannot simply arrogate to himself the power to accept a trustee's resignation, without Congress so providing. *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374–76, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986)(A federal agency may not confer power upon itself or expand its power).

■ The UST states in his Supplemental Memorandum that in §§ 703(a) and 1104(d),[9] the language of the Code appears to imply a distinction between whether a trustee "dies or resigns [10] during the case or is removed under section 324 of this title." Supp. Mem. at 7. However, Congress did not reiterate that same language in § 1202, and therefore it is not appropriate in these chapter 12 cases to explicate the wording of § 1104(d). *See Ron Pair*, Germain, *supra.* "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and pur-

posely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983).

### 1. "For cause"

■ The phrase "for cause" is not defined in the Bankruptcy Code. However, "it is ... well established that where Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (citations omitted). According to Black's Law Dictionary "for cause" means

> With respect to removal from office "for cause," means for reasons which law and public policy recognize as sufficient warrant for removal and such cause is "legal cause" and not merely a cause which the appointing power in the exercise of discretion may deem sufficient. (Citation omitted).... The cause must be one in which the law and sound public policy will recognize as a cause for official [sic] no longer occupying his office. (Citation omitted).

Black's Law Dictionary 644 (6th ed.1990). In Black's definition, "for cause" is "legal cause" and one which the "law and sound public policy" recognize as a cause for an official to no longer occupy his office, and impliedly, as a cause for an official to no longer be held to perform the duties of his

---

8. At the hearing, Mr. Daugherty raised the rhetorical question of whether this Court would expect panel trustees who have been designated for appointment as interim trustee in a particular chapter 7 case but who decline such appointment because [s]he discovers a disabling conflict to file a motion to resign. Obviously in the initial appointment process there is a period during which the designated panel member has not accepted the appointment or created any expectations that [s]he will be serving in the case. Until a trustee has accepted the appointment in a particular case, there is no issue of ceasing to perform duties voluntarily accepted.

9. The UST advances this argument notwithstanding hornbook teaching that "[T]he provisions of chapters 7, 9, 11, and 13 do not apply in chapter 12 cases unless specifically incorporated by a particular section of chapter 12." 8 Collier on Bankruptcy § 1200.02[2] (15th ed.).

10. Were the language of § 1104(d) applicable in this case, it would be incumbent on anyone analyzing that section to inquire whether a chapter 11 trustee, once installed in that role, is free to say unilaterally "I quit", or whether that is appropriately the subject of a motion filed with the Court and served on all parties in interest.

office. It is not "merely a cause which the *appointing* power ...may deem sufficient," but one involving "the law and sound public policy." (Emphasis added). By definition "for cause" contemplates considerations of public policy and law, which considerations would not, and could not, be addressed if a trustee were simply permitted to resign without notice to interested parties and without the opportunity for a hearing, which by necessity involves the Court.

### 2. "Notice and a hearing"

Section 324 states that a trustee may be removed "after notice and a hearing." Section 102, entitled "Rules of construction," provides, in pertinent part:

(1) "after notice and a hearing", or a similar phrase –

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly ...

"Obviously the purpose of 'notice and a hearing' is to enable parties to respond" to the issue that has been noticed. *Dinova v. Harris (In re Dinova)*, 212 B.R. 437, 444 (2d Cir. BAP 1997). The *Dinova* Court pointed out that "the bankruptcy court cannot make a determination of 'cause' ... without all of the facts which may be presented by the parties in interest." *Id.* "It is for the bankruptcy court, not the Chapter 7 trustee or any other party, to make decisions affecting all parties' rights." *Id.*

The UST argues, in his Memorandum in Support, that requiring a notice and a hearing in cases where a trustee wishes to resign would "burden the administration of bankruptcy cases." Mem. in Supp. at 9. While expediting administration of cases is a worthy pursuit, the procedures implemented to do so must conform with the precepts of due process. *In re General Order Governing Dismissal of Cases, Im-position of Sanctions for Incomplete Filings (Standing Motion of U.S. Trustee to Dismiss Bankruptcy Cases)*, 210 B.R. 941, 943–44 (Bankr.M.D.Pa.1997). As a general proposition, this Court cannot accept the UST's position that it is burdensome for a trustee or any other party to be required, consistent with due process, to give notice and allow for appropriate parties to be heard on substantive issues in a pending case.

■ The statute as enacted by Congress requires notice and a hearing. Neither the UST, the Clerk of Court nor the Court, can ignore the statute to lighten that burden, if any exists. *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374–76, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986)("[A federal] agency may not confer power upon itself. To permit an agency to expand its power in the face of a congressional limitation on its jurisdiction would be to grant to the agency power to override Congress. This we are unwilling and unable to do.... As we so often admonish, only Congress can rewrite this statute"); *In re Chateaugay Corporation*, 920 F.2d 183, 187 (2d Cir.1990)("[I]mproving legislation by amending it is not [this court's] function; only Congress can rewrite the statute"); *In re Pan Am Corp.*, 125 B.R. 372, 374 (S.D.N.Y.), *order aff'd*, 500 U.S. 946, 111 S.Ct. 2248, 114 L.Ed.2d 488 (1991)("[A] court may not use its review of the legislative history to rewrite a statute merely because the court disagrees with the manner Congress chose to further its policy")(citing *Louisiana, supra*); *Daluz v. Automatic Plating of Bridgeport, Inc. (In re Automatic Plating of Bridgeport, Inc.)* 202 B.R. 540, 542 (Bankr.D.Conn. 1996)("courts may construe statutes, they may not reconstruct them").

### 3. Pending versus future cases— § 324

"Removal applies to pending, but not future cases." 3 Collier on Bankruptcy § 324.01 (15th ed.). In *Richman v. Stra-*

*ley,* 48 F.3d 1139 (10th Cir.1995) the court analyzed this precise issue, also in terms of due process considerations. In *Richman* the standing chapter 12 and Chapter 13 Trustee, Richman, was informed by the U.S. trustee that she was to be replaced. The U.S. trustee filed a motion with the Court to remove her as standing trustee "in her existing cases." *Richman* at 1142. However, upon stipulation of the parties, the court dismissed the removal proceedings. Thereafter the U.S. trustee refused to assign her any new cases and Richman alleged the refusal was a deprivation of property without due process. *Id.* at 1143. The court held that standing trustees "do not have a property right in the assignment of new cases." *Id.* In so holding the court analyzed § 324 and stated:

> Although Congress explicitly added the presumption that removal in one case would constitute removal in all current cases, it omitted any mention of future cases. This omission implies that no property right vests until actual assignment of the case.... the party with the power of appointment may terminate that appointment at any time by refusing to assign new cases to the standing trustee.

*Id.* In addition, the Court stated "Congress failed to express any intent to expand due process protections to future cases ...." *Id.* at 1144. *See also In the Matter of Chapter 13, Pending and Future Cases,* 19 B.R. 713, 714–15 (Bankr.W.D.Wash.1982)(under the heading "TERMINATION OF APPOINTMENT AS STANDING TRUSTEE," the court order terminating standing trustee as to new cases without notice and hearing was "entirely proper" because the "disappointed would-be trustee is not entitled to a hearing; he has no vested interest in the position as to future appointments.") " 'REMOVAL AS TRUSTEE IN EXISTING CASES' ... The procedure for removal in all Chapter XIII cases filed under the former Bankruptcy Act and Chapter 13 cases is the same. Notice and hearing is required and cause for his removal must be shown." 19 B.R. at 715. The *Richman* Court also stated that, in order to terminate the trustee's appointment, the procedure to be used by "the party with the power of appointment," the UST, was to "refus[e] to assign new cases to the standing trustee." *Richman* at 1144.

 This reasoning applies to this case as well—while the UST can terminate the standing chapter 12 trustee at any time he wishes by not assigning him any new cases, the UST may not remove the chapter 12 trustee from pending cases without a notice and a hearing, pursuant to § 324. "Once appointed in a case, a trustee can be removed from that case only by the bankruptcy court and only under section 324." 3 Collier on Bankruptcy § 324.01 n. 2 (15th ed.), citing *In re Bernard,* 31 F.3d 842, 844 (9th Cir.1994).

## B. Duties

### 1. Duties of the UST pursuant to 28 U.S.C. § 586

28 U.S.C. § 586, first effective in 1978, sets forth, *inter alia,* the duties of the U.S. Trustee. This section provides, in pertinent part:

(a) Each United States trustee, within the region for which such United States trustee is appointed, shall-

(1) establish, maintain, and supervise a panel of private trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11;

(2) serve as and perform the duties of a trustee in a case under title 11 when required under title 11 to serve as trustee in such a case;

(3) supervise the administration of cases and trustees in cases under chapter 7, 11, 12, or 13 of title 11 by, whenever the United States trustee considers it to be appropriate-

(A) monitoring applications for compensation and reimbursement filed under section 330 of title 11

and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to any of such applications;

(B) monitoring plans and disclosure statements filed in cases under chapter 11 of title 11 and filing with the court, in connection with hearings under sections 1125 and 1128 of such title, comments with respect to such plans and disclosure statements;

(C) monitoring plans filed under chapters 12 and 13 of title 11 and filing with the court, in connection with hearings under sections 1224, 1229, 1324, and 1329 of such title, comments with respect to such plans;

(D) taking such action as the United States trustee deems to be appropriate to ensure that all reports, schedules, and fees required to be filed under title 11 and this title by the debtor are properly and timely filed;

(E) monitoring creditors' committees appointed under title 11;

(F) notifying the appropriate United States attorney of matters which relate to the occurrence of any action which may constitute a crime under the laws of the United States and, on the request of the United States attorney, assisting the United States attorney in carrying out prosecutions based on such action;

(G) monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress; and

(H) monitoring applications filed under section 327 of title 11 and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications;

(4) deposit or invest under 345 of title 11 money received as trustee in cases under title 11;

(5) perform the duties prescribed for the United States trustee under title 11 and this title, and such duties consistent with title 11 and this title as the Attorney General may prescribe; and

(6) make such reports as the Attorney General directs.

(b) If the number of cases under chapter 12 or 13 of title 11 commenced in a particular region so warrants, the United States trustee for such region may, subject to the approval of the Attorney General, appoint one or more individuals to serve as standing trustee, or designate one or more assistant United States trustees to serve in cases under such chapter. The United States trustee for such region shall supervise any such individual appointed as standing trustee in the performance of the duties of standing trustee . . . .

■ Section 586 of title 28 delineates, *inter alia*, the duties of the United States trustee and requires him or her to perform the listed tasks as specified. These include monitoring plans filed under chapter 12, appointing a standing trustee under chapter 12, and monitoring such trustee. However, since the statute does not contain any language directing that it is among the duties of the UST to accept a trustee's resignation from a pending case, such duty can be presumed to be excluded. This conclusion is supported by the maxim of statutory construction, *expressio unius est exclusio alterius*, meaning that the expression of one thing is the exclusion of another. Black's Law Dictionary 581 (6th ed.1990). "When certain . . . things are specified in a law . . . an intention to exclude all others from its operation may be inferred." *Id., see e.g. U.S. Term Limits v. Thornton*, 514 U.S. 779, 793 n. 9, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995)(Congress' power to judge who should be a member of that body strictly limited by

the qualifications enumerated in the U.S. Constitution); *U.S. v. Wells Fargo Bank*, 485 U.S. 351, 357, 108 S.Ct. 1179, 99 L.Ed.2d 368 (1988)("the expression of one is the exclusion of others"). In 28 U.S.C. § 586, which delineates the duties of the United States trustee, Congress decided which duties to include and, by inference, which others to exclude.

### 2. Trustee's Duties as an "Officer of the Court"

 The position of bankruptcy trustee is deemed by Congress to be an "officer of the court." 18 U.S.C. §§ 153, 154. As such, this Court has the inherent power to regulate those officers of the court admitted before it and to take appropriate action to assure that they live up to their obligations.[11] Local Rule 2090–2(c), United States Bankruptcy Court, Northern District of Ohio. In addition, the Court has the inherent power to control its docket as superintendent of its pending caseload. *See e.g., Epps v. Blackshear (In re Epps)*, 2 B.R. 737, 739 (S.D.N.Y.1980). In *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 894 F.2d 696 (5th Cir.1990), the Court stated that the inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Id.* at 702, cited with approval in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). "The court's control over a lawyer's professional life derives from his relation to the responsibilities of a court." *Theard v. United States*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957).

Guidance as to conduct of an attorney[12] is provided by case law and applicable court rules and embodied in codes of professional conduct. *In re Snyder*, 472 U.S. 634, 645, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985). In *Snyder* the Supreme Court agreed with the Eighth Circuit Court of Appeals "[t]hat the standard of professional conduct expected of an attorney is defined by the ethical code adopted by the licensing authority of the attorney's home state." *Snyder* at 645 n. 6, 105 S.Ct. 2874. In addition, the Court went on to note that a Court was entitled

> to charge petitioner with the knowledge of and the duty to conform to the state code of professional responsibility. The uniform first step for admission to any federal court is admission to a state court. The federal court is entitled to rely on the attorney's knowledge of the state code of professional conduct applicable in that state court . . . .

*Id.*

The Code of Professional Responsibility, adopted in Ohio on October 5, 1970, provides the procedure for withdrawal from employment. DR 2–110, as codified in Title 19, Ohio Rev.Code, provides, in pertinent part:

(A) In General

(1) If permission for withdrawal from employment is required by the rules of the tribunal, a lawyer shall not withdraw from employment in a proceeding before that tribunal without its permission.

(2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client,

---

**11.** Local Rule 2090–2(c) for the United States Bankruptcy Court, Northern District of Ohio, effective April 15, 1997, states "when necessary to control or eliminate disruptive, abusive, or unprofessional practices or conduct, this Court, through its inherent powers, may after notice and hearing sanction any attorney or party."

**12.** The Trustee happens to be an attorney. However, not all trustees are attorneys, but as a trustee, as noted above, he or she is considered "an officer of the court." Although state rules governing attorneys would not apply to a non-attorney trustee, the rules of the District Court and the Bankruptcy Court would apply because by accepting the office of trustee the individual voluntarily submits to the authority of the Court.

allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

. . .

(C) Permissive Withdrawal. If DR 2–110(B) [Mandatory Withdrawal] is not applicable, a lawyer may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because:

. . .

(6) He believes in good faith, in a proceeding pending before a tribunal, that the tribunal will find the existence of other good cause for withdrawal.

Title 19, Ohio Rev.Code at 328–29 (Anderson 1998). The Preface to the Code of Professional Responsibility, added effective July 15, 1974, states that the "Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the **minimum** level of conduct below which no lawyer can fall without being subject to disciplinary action." *Id.* at 318 (emphasis added).

Local Civil Rule 83.9 for the United States District Court for the Northern District of Ohio states:

The attorney of record may not withdraw, nor may any other attorney file an appearance as a substitute for the attorney of record, without first providing written notice to the client and all other parties and obtaining leave of Court. Attorneys from the same firm may file and serve a notice of appearance or substitution for the attorney of record without obtaining leave of Court.

Pursuant to Local Rules 2090–1 and 2090–2 for the United States Bankruptcy Court, Northern District of Ohio, attorneys in good standing with the bar of the United States District Court for the Northern District of Ohio are entitled to practice before the Bankruptcy Court and may be disciplined in accordance with the Local Civil Rules of the District Court. Thus Local Rule 83.9 is applicable to attorneys practicing in the Bankruptcy Court.

As an "officer of the court," so deemed by Congress, and as an Ohio attorney admitted to practice by the Supreme Court of Ohio and practicing in the Bankruptcy Court of the Northern District of Ohio, the Trustee was bound by DR 2–110 of the Ohio Code of Professional Responsibility and by the relevant local rules for this District, all of which require that he use certain procedures to withdraw from a case, including notice to all parties and leave of the Court. Appointment by the U.S. Trustee's office to the position of standing chapter 12 trustee does not permit the Trustee to side-step the rules under which he is permitted to practice.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES the Motion to Reconsider its Order of November 28, 2000, filed by Donald M Robiner, United States Trustee, Ohio/Michigan Region 9. Michael V. Demczyk will remain the Standing Chapter 12 Trustee in the above-captioned cases unless and until his resignation or removal is authorized by this Court after proper notice and hearing.

**IT IS SO ORDERED.**